UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re:
**SUNSET PARTNERS, INC.**,                                    Chapter 11
    Debtor                                             Case No. 17-12178-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re:
**BEMA RESTAURANT CORPORATION**,                              Chapter 7
    Debtor                                             Case No. 17-12434-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

Upon consideration of 1) the Trustee's Motion to Sell Personal Property of the Estate Free and Clear of Liens and Interests (the "Sale Motion"); 2) the Notice of Intended Private Sale of Property, Solicitation of Counteroffers, Deadlines for Submitting Objections and Higher Offer and Hearing Date; 3) the Court's Order dated February 15, 2018 authorizing the sale of personal property to Christopher Brown ("Brown") and Brown Ribbon Entertainment, LLC ("Brown Ribbon") (collectively, the "Buyer");[1] 4) the

---

[1] The order provided the following:

    The Court accepted final sealed bids by two parties. The highest bid was submitted by Brown Ribbon Entertainment, LLC in the amount of

1

Court's "Order Authorizing Trustee to Sell Debtor's Sunset Cantina Assets Free and Clear of Liens, Claims and Encumbrances," dated March 8, 2018, which order, inter alia, (a) did not provide for the sale by the Trustee of an entertainment license, (b) provided that the Buyer would have to negotiate a lease for the premises with the landlord; (c) was subject to a mutually acceptable Purchase and Sale Agreement coupled with an additional deposit of $90,000, (d) provided the Buyer with a deadline of 21 days after entry of the Order to notify the Trustee that it had not been able to satisfy the contingency that it was able to negotiated an acceptable lease with the landlord, and (e) provided for a closing within five business days following approval by the Massachusetts Alcoholic Beverages Control Commission of the transfer of the liquor licenses held by the Debtor; 5) the "Motion to Intervene and Enjoin or Restrain the Prospective Sale of Sunset Cantina" (the "Motion to Intervene") filed by Brown in which Brown stated the following:

> Brown and his co-buyer Brown Ribbing Entertainment, Inc. were unable to complete the sale of the Cantina due to various acts of the Trustee and Boston University. As set forth in the Affidavit of Brown dated May 24, 2018, the Trustee falsely misrepresented that the Cantina was to be sold with a Full Entertainment License. The Trustee knew or should have known before advertising the restaurant for sale that Boston University wanted to terminate the Full Entertainment License associated with the Cantina and believed a Full Entertainment License was a "Non-starter" to any lease.

6) Brown's Affidavit in which he stated, among other things, that "[u]pon information and belief, the Trustee knew or should have known that live entertainment would not be

---

$1,500,002. The other bid was submitted by East Coast Tavern Group, Inc. in the amount of $1,100,000. In the event, Brown Ribbon Entertainment, LLC is unable to close, East Coast Tavern Group, Inc. may close on the property. Counsel to the Chapter 11 Trustee shall submit a proposed order.

provided or approved by Boston University before causing the Sunset Cantina to be advertised as being sold with a Full Entertainment License;" 7) the Trustee's Opposition to the Motion to Intervene in which she stated:

> Brown has not established grounds for the injunction or restraining order he seeks by the motion, which is an improper collateral attack on the now-final Sale Order (doc. 231, entered March 8, 2017) approving the Trustee's motion to sell the Sunset Cantina restaurant assets at auction. Nor has Brown, who was the winning bidder at the auction, established standing to seek an injunction. Brown exercised the right to terminate his and Brown Ribbon Entertainment LLC's winning bid on March 22, 2018, the deadline under the Sale Order for delivering a $90,000 deposit and signed purchase and sale agreement.

8) the Buyer's notice to the Trustee, referenced by the Trustee in her Opposition, that it did not "intend to move forward" to consummate the sale owing to the inability to negotiate a lease for the premises;[2] and 9) the standard applicable to the issuance of a preliminary injunction,[3] the Court denies the Motion to Intervene. The Motion to

---

[2] In an email dated March 22, 2018 from Brown to Trustee's counsel, Brown stated:

> [M]y team has communicated and notice is hereby given that we do not intend to move forward. We are over 1.2 million apart on a 10 year lease (not including options) and we have no intentions of paying a deposition of 163,000.00 to the landlord. We doubt the numbers can be sufficiently mediated and the landlord has placed a no live Entertainment clause in the draft lease with [sic] does not work [for] us (my partner is an entertainer/ singer). . . .

[3] *See* Aerovox, Inc. v. Parallax Power Components, LLC (In re Aerovox, Inc.), 281 B.R. 419, 432–33 (Bankr. D. Mass. 2002), in which this Court stated:

> In determining whether preliminary injunctive relief is appropriate, the United States Court of Appeals for the First Circuit has directed trial courts to consider: 1) the likelihood of success on the merits; 2) the potential for irreparable harm if the injunction is denied; 3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted

3

Intervene is an improper pleading. "[A] proceeding to obtain an injunction or other equitable relief" requires the commencement of an adversary proceeding. *See* Fed. R. Bankr. P. 7001(7). Even if the Court were to overlook that procedural infirmity, as well as Brown's standing to enjoin the sale to the backup bidder,[4] the Court concludes that

---

> with the hardship to the movant if no injunction issues; and 4) the effect, if any, of the court's ruling on the public interest. *See* Ross–Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996) (citations omitted). The burden of proof is on the moving party to establish all four requirements. *See* I.P. Lund Trading ApS v. Kohler, Co., 163 F.3d 27, 33 (1st Cir. 1998).
>
> In proving the first element, likelihood of success on the merits, "the movant need not demonstrate that there is no chance that he will lose." A.W. Chesterton Co., Inc. v. Chesterton, 907 F.Supp. 19, 22 (D. Mass. 1995). . . .
>
> It is well settled that lack of an adequate remedy at law is a substantial element of irreparable harm. If money damages will adequately redress harm, injury is not considered irreparable. Injunctive relief is not warranted where damages suffice. *See* Ocean Spray Cranberries, Inc. v. Pepsico, Inc., 160 F.3d 58, 61 (1st Cir. 1998); Medika Intern., Inc. v. Scanlan Intern., Inc., 830 F.Supp. 81, 89 (D. P.R. 1993). "In commercial litigation, the question whether the plaintiff is likely to suffer irreparable injury may be cast in terms of whether the plaintiff has available a legal remedy adequate to compensate it for its injuries." Itek Corp. v. First Nat'l Bank of Boston, 566 F.Supp. 1210, 1216 (D. Mass. 1983).

In re Aerovox, Inc., 281 B.R. at 432–33.

[4] *See generally* In re Gulf States Steel, Inc. of Alabama, 285 B.R. 739 (Bankr. N.D. Ala. 2002), in which the court observed:

> There are numerous authorities which hold that a non-creditor, whose only connection with a bankruptcy case is that the party was an unsuccessful bidder at a bankruptcy sale, lacks standing to challenge the right of other bidders to consummate the sale. *See, e.g.,* Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111 F.3d 269, 273 (2nd Cir.1997) (recognizing that, although not an absolute rule, "an unsuccessful

Brown has failed to address, let alone sustain, the burden of establishing the required elements to obtain a preliminary injunction. Brown, who appears only to seek the injunction on his own behalf and not on behalf of Brown Ribbon, has not demonstrated either a likelihood of success on the merits or irreparable harm, particularly where the Buyer exercised its remedy to notify the Trustee of its intention to not to move forward with the sale owing to an inability to satisfy the contingency of negotiating an acceptable lease.

The Court, having reviewed the submissions of Brown and the Trustee can find no reference whatsoever to the sale of an entertainment license in either the Trustee's Sale Motion or the Notice of Intended Private Sale and no reference to an entertainment license in the Court's March 8, 2018 order authorizing the sale to the Buyer. Moreover, the foregoing documents were explicit: The Debtor's lease was not being assumed and assigned, indeed the lease, according to the Trustee, "expired by operation of 11 U.S.C. § 356(d)(4)(A)," and the sale was subject to the Buyer negotiating a new lease with the landlord.

---

bidder . . . usually lacks standing to challenge a bankruptcy court's approval of a sale transaction."); In re Broadmoor Place Investments, L.P., 994 F.2d 744, 746 n. 2 (10th Cir. 1993), *cert. denied*, 510 U.S. 1071, 114 S.Ct. 877, 127 L.Ed.2d 73 (1994); In re Harwald Co., 497 F.2d 443, 444–45 (7th Cir. 1974); In re Crescent Mfg. Co., 122 B.R. 979, 981 (Bankr. N.D. Ohio 1990); and In re Karpe, 84 B.R. 926, 928–29 (Bankr. M.D. Pa. 1988).

In re Gulf States Steel, Inc. of Alabama, 285 B.R. at 742. While the Buyer was the successful bidder on February 15, 2018, its status now is analogous to an unsuccessful bidder as it notified the Trustee that it was unable to negotiate a lease with the landlord, and Brown now seeks to enjoin the sale to the backup bidder.

For the foregoing reasons, the Court shall enter an order denying the Motion to Intervene.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  June 8, 2018